STATE OF MAINE

Cumberland, ss.

STATE OF MAI·
Cu··    ·, ss. ·lerk

SEP 1 1 2017
1:26 p.m.
R·    ·IVED

SUPERIOR COURT

Location: Portland

BRENT LANGLOIS

Petitioner

v.

MAINE UNEMPLOYMENT INSURANCE COMMISSION

Respondent

Docket No. CUMSC-AP-17-0008

**DECISION AND JUDGMENT**

This Rule 80C appeal from administrative agency action comes before the court on the appeal of Petitioner Brent Langlois from a decision of Respondent Maine Unemployment Insurance Commission (MUIC) denying Petitioner's motion for reconsideration of its prior determination to disqualify him from unemployment benefits because he was discharged for misconduct. *See* 26 M.R.S. § 1043(2), 1193(2). This court has jurisdiction of the appeal pursuant to 26 M.R.S. §§ 1194(8) and 5 M.R.S. § 11001 *et seq. See also* M.R. Civ. P. 80C.

The court elects to decide the appeal without oral argument. *See* M.R. Civ. 80C(l) (oral argument to be scheduled "[u]nless the court otherwise directs." *See also Lindemann v. Comm'n on Governmental Ethics & Election Practices*, 2008 ME 187, ¶ 26, 961 A.2d 538 (Rule 80C permits court to direct that oral argument not be scheduled).

1

Based on the entire record, the court concludes that Respondent MUIC's decision is supported by substantial evidence and therefore denies the appeal and grants judgment to Respondent.

*Background*

The following factual summary is based on the record on appeal. References to testimony are based on the transcript of the November 28, 2016 telephonic hearing on the employer's appeal from the deputy's decision awarding benefits. The transcript occupies pages 19-62 of the record, and page references are to the record as paginated. *See* R. 19-62.

Petitioner Brent Langlois was employed as a stylist with Cara & Company, a hair salon and spa in Falmouth owned and operated by Cara Michaud, from 2010 until October 4, 2016, when he was discharged. R. 36. During the two weeks before that date, he had not been to work due to what he said were injuries sustained in a four-wheeling accident. R. 50. The injuries were not work-related and occurred outside the scope of his employment.

On October 4 Petitioner Langlois telephoned his employer to say that he would be out for a third consecutive week due to the same injuries. R. 39-40. At that point in the telephone conversation, Cara Michaud, the owner, requested that he provide a doctor's note to confirm the injuries and his need for time off work in order to convalesce. *Id.* Petitioner's response to the request is disputed. Cara Michard testified that Petitioner responded to the request by saying he would provide a doctor's note if the employer paid for the doctor's visit. R. 40. Petitioner

2

acknowledged asking Ms. Michaud, "Would you like to pay for the doctor—for me to go to the doctor's?" R. 51.

At that point the telephone call ended. Ms. Michaud contends that the Petitioner hung up on her. R. 41. Petitioner contends that the call was dropped. R. 51. However, Petitioner did not call back to resume the conversation. R. 4 Ms. Michaud and her manager discussed the telephone conversation and agreed that Petitioner should be terminated. R. 41.

At least fifteen minutes after the first call had been terminated, the manager called Petitioner back and told him he was being terminated. R. 42-43. When he asked if it was for hanging up on Ms. Michaud, the manager said it was. R. 42. However, Ms. Michaud asked the manager to call Petitioner back and tell him that his termination was due to his insistence that the employer pay for the doctor's note as well as for the hang-up. R. 42-43. During her testimony, Ms. Michaud cited previous instances in which Petitioner had shown disrespect, not to her personally, but, as she put it, to the business, including an instance in May 2016 when Petitioner walked out on a client who was sitting in the stylist's chair, with another client waiting. R. 46-47.

The MUIC deputy initially granted benefits on the basis that the employer had not met its burden to prove that the discharge was for misconduct. R. 66-69. On the employer's appeal and after hearing, the Division of Administrative Hearings hearing officer ruled in favor of Cara & Company. R. 14-18 (Me. Unemp. Ins. Comm'n, Div. of Admin. Hrgs. Case No. 2016 A 06204). That decision was upheld

by the Commission, R. 7-8 (Me. Unemp. Ins. Comm'n Dec. No. 16-C-06874), which also denied Petitioner's request for reconsideration. R. 1-2 (Me. Unemp. Ins. Comm'n Dec. No. 17-C-00490).

*Standard of Review*

The court reviews the administrative record "to determine whether the Commission correctly applied the law and whether its fact findings are supported by any competent evidence." *McPherson v. Me. Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818. The court "will not overrule findings of fact supported by substantial evidence, defined as 'such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion.'" *Sinclair Builders, Inc. v. Me. Unemployment Ins. Comm'n*, 2013 ME 76, ¶ 9, 73 A.3d 1061 (quotation omitted). The fact that the record contains inconsistent evidence or that inconsistent conclusions could be drawn from the record does not prevent the agency's findings from being supported by substantial evidence. *In re Me. Clean Fuels, Inc.*, 310 A.2d 736, 741 (Me. 1973). The court will not disturb a decision of the Commission "unless the record before the commission compels a contrary result." *McPherson*, 1998 ME 177, ¶ 6, 714 A.2d 818.

*Analysis*

The record indicates that the administrative hearing officer's decision appropriately placed the burden on the employer to prove that the Petitioner was discharged for misconduct, and that the employer's burden was accurately defined.

4

R. 16.    Accordingly, the court sees no error of law in the decision underlying this appeal.

As to the factual determinations, clearly there are disputes of fact that could have been decided differently.    However, it was reasonable, as the hearing officer found, for the employer to ask for a doctor's note to support Petitioner's request to be absent from work for a third straight week.    R. 16.    Moreover, the Petitioner acknowledged that he asked Ms. Michaud if she would pay for him to obtain a doctor's note.    R. 51.  He also did not dispute that he did not call back after the first telephone call was terminated, which supports the hearing officer's finding that Petitioner's dropped call explanation "is not compelling given that he made no reasonable attempt to immediately contact the owner and manager to explain the dropped call."  R. 16.

Moreover, given that Petitioner claimed to have seen a chiropractor for his injuries, the hearing officer found that Petitioner "offered no reasonable explanation for his failure to request documentation regarding his injury from the chiropractor as to a medical opinion on his ability to work."  *Id.*

The hearing officer decided that Petitioner "unreasonably refused to obtain the documentation [requested by the employer] and hung up during the conversation with the owner and manager.  The [Petitioner's] behavior is found to be unacceptable for a place of employment and is found to be a culpable breach of his duties to the employer."  R. 16.    The hearing officer found that the employer's

expectations of Petitioner were reasonable and that the Petitioner's behavior "manifested a disregard for the material interests of the employer." R. 17.

The findings of fact reflected in the underlying decision are all supported by the administrative record, and, as noted above, the court discerns no error of law in the MUIC's analysis.

Accordingly, it is ORDERED AND ADJUDGED as follows:

1. The appeal of Petitioner Brent Langlois is denied. The decision of the Maine Unemployment Insurance Commission in Decision No. 17-C-00490 is hereby affirmed.

2. Judgment is hereby granted to the Respondent Maine Unemployment Insurance Commission.

Dated 11 September 2017

_____
A.M. Horton, Justice

6